[Crim. No. 1680.   Second Appellate District, Division Two.—November 30, 1928.]

THE   PEOPLE,   Respondent,   v.   FRANK   O.   LIND, Appellant.

Grant B. Cooper, Cooper & Collings for Appellant.

U. S. Webb, Attorney-General and W. Augustine for Respondent.

CRAIG, J.—The appellant was charged by information filed by the district attorney of Los Angeles County with grand larceny, embezzlement, and grand theft. He was convicted upon counts charging the two last-named offenses, and appeals from the judgment and order denying a motion for new trial. It was contended in a motion for an instructed verdict and motion for a new trial, and is here insisted, that the evidence conclusively shows that the alleged embezzled and stolen moneys were received by his employers, and that there is therefore no evidence to support the verdict and judgment.

It appears that appellant was employed by a furniture company in the city of Los Angeles during the year 1927 and that he received a salary of $60 per week; that it was his duty to receive, enter upon the proper books, and deposit in bank moneys and checks paid to him by customers, for the company's account. An auditor testified that over a period of about eight and one-half months customers paid in $14,818.71 in divers amounts for which their accounts were not credited, and which had been withdrawn from the bank. Another witness testified that when appellant was arrested he was asked what he had done with the missing funds, and that he replied: "I bought my house, and I paid on my automobiles and my furniture," and admitting having about $400 in the bank; that he was asked: "Mr. Lind, if I understand you correctly, the girl handed you the cash, and you took out what you desired and deposited the rest," to which appellant answered "Yes." Without detailing all of the transactions wherein, according to testimony offered by the prosecution, defalcations occurred, we may observe the principal ones. It was testified that of $500.61 in cash and $126 in checks paid in on July 2, 1927, there was a shortage of $500; that on April 22, 1927, the difference between amounts received and deposited or accounted for was $900; and that on August 3, 1927, the discrepancy was $300. The defendant during cross-examination swore that while receiving a salary of but $60 per week, he purchased in the

year 1927 an Overland and three Stutz automobiles, and that although he maintained a home for himself and wife, he had "two or three" other places of residence which he visited but did not occupy continuously.

By isolating certain items appellant attempts through illustration to advance the theory that from the face of the firm's records upon which the prosecution relied, it appeared that the shortages could not have existed, and that the embezzlements could not have occurred. To state his principal argument most favorably to appellant, it is said that "Defendant was supposed to have manipulated the books and stolen the money, according to the prosecution," but that some customers paid in checks and other customers paid in cash, which the defendant did not deposit at that time, but that the amounts offsetting them were deposited thereafter, so that the books balanced. However, quoting from direct evidence which the court and jury had before them, it was averred by an accountant who twice examined the books: "Certainly the books balanced. The missing moneys were not credited to any place. . . . They were not credited anywhere. If you eliminate from your bank account moneys which are not deposited, you certainly cannot give respective accounts credit for it. . . . Therefore, in the beginning you have eliminated a credit of $300 to this accounts-receivable control or to your individual account. It shows he still owes $300 which he has paid. It shows he still owes $300. It is accounts receivable, but by circularizing the accounts, he says he does not owe that much money." It is argued that since the books do not show the discrepancies, there could be no shortage, and that appellant was therefore convicted upon circumstantial evidence of shortages which did not exist. However, from the foregoing positive evidence of the receipt of moneys which appellant neither charged to himself nor credited to the customers, it is obvious that there was a shortage, notwithstanding the fact that his books were ingeniously and perfectly balanced. Upon such evidence, but a small portion of which is set out herein, we are not compelled to invoke the provisions of article VI, section 4½, of the constitution, discussed by appellant.

The judgment and order appealed from are affirmed.

Works, P. J., and Thompson, J., concurred.